UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT GENA,

    Plaintiff,

    v.

PEPSI-COLA GENERAL BOTTLERS,
INC., d/b/a PEPSI AMERICAS, INC.,

    Defendant.

No. 03 C 5846
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

Plaintiff claims that Defendant Pepsi-Cola General Bottlers, Inc. ("Pepsi or PCGB") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII") by retaliating against him for speaking out against the discrimination of a co-worker and for filing administrative charges. Specifically, he claims Pepsi retaliated against him by (1) adding a new classification for painters in the collective bargaining agreement, (2) eliminating his position of Machinist/Painter, and (3) terminating his employment. The parties have filed cross motions for summary judgment. For the following reasons, Plaintiff's partial motion for summary judgment is denied, and Defendant's motion for summary judgment is granted in part.

**I. PRELIMINARY ISSUES**

First, although I recognize that Plaintiff's Rule 56.1(b)(3)( C) statement was filed one day late and is untimely, I decline to strike his statement of facts.

Plaintiff asks that I strike facts regarding Plaintiff's medical leave of absence, as well as Pepsi's offering a general plant job to Plaintiff. Defendant did indeed represent in open court that Plaintiff's medical leave has nothing to do with the decisions in this case. Defendant's briefs

likewise do not point to Plaintiff's medical leave as a basis for any adverse employment actions. I decline to strike Defendant's facts as to Plaintiff's medical leave, but consider them only for purposes of background information, providing further context to the events surrounding the alleged retaliation.

Next, Plaintiff contends that the offer of employment conveyed from Human Resources Manager Rene Gibson should be stricken as it constitutes a settlement offer in violation of Rule 408 of the Federal Rules of Evidence. Gibson's June 3, 2003 letter makes no mention of a settlement, no mention of a release, no mention of dismissal of claims, and attaches no conditions to Plaintiff's acceptance. Though Pepsi's attorney had previously conveyed a settlement offer to Plaintiff's attorney, that offer was legally separate from the employment offer made to Plaintiff by Gibson. Accordingly, I will consider Pepsi's offer of employment.

## II. STATEMENT OF RELEVANT FACTS

### A. Relevant Protected Activity

Plaintiff is a former employee of Pepsi-Cola General Bottlers, Inc. On March 15, 2002, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against PCGB, wherein Plaintiff alleged that his supervisor reduced his overtime and changed his shift in retaliation for his support of fellow co-worker Arvin Parker ("Parker"). On August 7, 2002, Plaintiff and Parker filed a Complaint against PCGB alleging that PCGB retaliated against Plaintiff for his support of Parker. He also testified in September of 2002 regarding another EEOC matter concerning another employee. On March 10, 2003, Plaintiff filed a second charge with the EEOC alleging that Pepsi continued to retaliate against him for protesting the treatment of Parker. On April 9, 2003, Plaintiff filed a Charge with the National

Labor Relations Board alleging that he was "laid off in retaliation for his union and/or protected activity." On July 21, 2003 Plaintiff filed a third charge with the EEOC alleging that Pepsi eliminated his position and refused to hire him into a machinist position in continued retaliation for supporting Parker. On August 20, 2003, Plaintiff filed another complaint, the instant action, alleging retaliation and Title VII violations. On December 18, 2007, Plaintiff filed another charge of discrimination with the EEOC alleging retaliation. On October 5, 2009 Plaintiff filed a third Complaint again alleging retaliation.

### B. Employment History

Plaintiff began his employment with PCGB as a general laborer in August of 1980. In October of 1980, Plaintiff joined the International Association of Machinists and Aerospace Workers, Local 126 ("Local 126" or "the Union"). He became classified as a Machinist pursuant to the collective bargaining agreement ("CBA") with PCGB. Pepsi's Machinists are members of a "skilled trade" that install, repair and perform maintenance on production line equipment. Although Plaintiff was classified as a machinist, he primarily worked as a painter. In his capacity as a Machinist, Plaintiff stated that he was "the only painter there for 22 years" and that he was "the main painter."

While Plaintiff was employed with Pepsi, the company employed outside contractors to perform certain painting functions. In 2000, Plaintiff filed grievances with the Union protesting that "outside contractors have performed duties that I have done in the past."

In June 2001, Joseph Yates ("Yates") moved from another Pepsi facility to become the Director of Operations/Plant Manager at the 51st Street Plant. Yates was responsible for all operational activity at the facility. Yates decided to classify a painter position because there was

no painter position classified in the Union's Collective Bargaining Agreement ("CBA"). Yates also requested the introduction of two separate classifications (production and warehouse) for forklift drivers. In May of 2002 Pepsi and Local 126 began negotiating a new contract. On June 12, 2002, the final CBA was executed between Pepsi and Local 126 which covered the period of time between May 5, 2002 through May 5, 2007. The new 'painter' classification, was not to impact any current employee, though there was not an explicit grandfather clause. Plaintiff's Machinist/Painter position was to remain unchanged.

Plaintiff began a medical leave of absence in March of 2002 which continued until January 13, 2003.

Defendant contends that in the fall of 2002, Pepsi underwent a company-wide cost-cutting initiative whereby Yates was directed to eliminate positions at his facility. Yates testified that management determined that the "machinist/painter" position could be eliminated with little or no negative impact on the facility; Yates eliminated the position. This and other eliminations were determined in the Fall of 2002 and scheduled to go into effect on January 1, 2003. Plaintiff contests that any labor cuts were made at Defendant's 51st street location as a result of budget cuts. The basis for his objections are what he considers insufficient documentation of the cost-cutting-initiatives.

In the seven years since Pepsi eliminated Plaintiff's position, no employee has filled the painting position and the company continues to use outside contractors to paint on an as-needed basis.

Plaintiff reported to work on January 13, 2003. Pepsi Human Resources Manager Rene Gibson called Plaintiff on the evening of January 13 and told him not to return to work, and that

4

they would review the work they had available to him.  Maintenance Manager Ray Thomas made the decision that Plaintiff was not qualified to work as a machinist.  His decision was reviewed and approved by Yates.  Those contacted regarding Plaintiff's work qualifications were generally unable to confirm his qualifications for machinist work, stating that his primary function was a painter, and that he at times served as an extra "set of eyes or hands" when needed.  No former supervisor stated that he was unqualified to perform machinist work, although they admit that they had not observed him do such work unassisted.  Pepsi determined that Plaintiff did not have the necessary prior machinist work to fill a machinist position.  Plaintiff's employment was officially terminated on June 6, 2003.

Plaintiff claims that Pepsi violated Title VII by retaliating against him for speaking out against the discrimination of a co-worker and for filing administrative charges by (1) adding a new classification for painters in the collective bargaining agreement, (2) terminating his employment, and (3) refusing to hire him as a machinist.

### III. DISCUSSION

The parties have filed cross motions for summary judgment.  Plaintiff alleges that he suffered three adverse actions: (1) a reclassification of his job causing him a loss of pay and demotion in May 2002; (2) the termination of his Machinist/Painter position; and (3) the refusal to retain and/or re-hire Plaintiff as a Machinist in June 2003.  Though Defendant moves for summary judgment on all claims, Plaintiff moves for judgment only as to the termination and refusal to retain claims.

An employee may use either the direct or indirect method of proof to support a case of retaliation.  *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008).  Under the direct

method, Carter must establish a *prima facie* case by presenting direct evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Luckie v. Ameritech Corp.,* 389 F.3d 708, 714 (7th Cir.2004). Both direct and circumstantial evidence can be used to establish the causal connection between a plaintiff's protected activity and the adverse action taken by the employer. *Rudin v. Lincoln Land Cmty. Col.*, 420 F.3d 712, 720 (7th Cir. 2005). "[D]irect evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Id.* (quoting *Eiland v. Trinity Hosp.,* 150 F.3d 747, 751 (7th Cir.1998)). Circumstantial evidence is evidence that allows a jury to infer intentional discrimination by the decision maker. *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir.2003). Examples of circumstantial evidence include suspicious timing, ambiguous statements, and evidence that the employer's reason is pre-textual. *Id.* at 719-22. A plaintiff proceeding according to the direct method of proof may rely on direct or circumstantial evidence. *Id*. at 720. Plaintiff may prevail under the direct method, therefore, by "'showing an admission of discrimination' or by 'constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'" *Cole v. Ill.,* 562 F.3d 812, 815 (7th Cir.2009) (quoting *Ridings v. Riverside Med. Ctr.,* 537 F.3d 755, 771 (7th Cir. 2008).

Under the indirect method of proof, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than a similarly situated employee who did not engage in a statutorily protected activity. *Stephens v. Erickson*, 569 F.3d 779, 786 (7 th Cir. 2009).

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a non-discriminatory reason for the employment action. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552 (7th Cir. 2004). If the employer articulates such a reason, then the plaintiff must prove that the employer's explanation is merely pretext. *Id*.

### A. Reclassification of Plaintiff's Job.

Here, Plaintiff complains that his job was reclassified in retaliation for his protected action. Not only has Plaintiff failed to show that Yates was aware of who Plaintiff was at the time of the reclassification, Plaintiff has also failed to establish that he was adversely impacted by the reclassification itself; all testimony in the record shows that Plaintiff would not be, and was not, reclassified as a Painter under the new classification system. Instead, Plaintiff maintained his Machinist classification. While Plaintiff is correct that there was not an explicit grandfather provision in the new classifications, all testimony stated that the new classification would only apply to new hires, and would *not* apply to current employees. Likewise, Plaintiff did not lose any pay as a result of this reclassification itself. Although Plaintiff notes that he was paid less than the correct Machinist after the classification, he was in fact paid the Machinist wage of the prior year– a clerical error. Plaintiff was never paid the wage of the newly classified Painter.

Because Plaintiff has not shown that he was adversely impacted by the reclassification, or that there was a causal connection between his protected activity and the decision to create the new classification system, Defendant's motion for summary judgment as to this claim is granted. Because Plaintiff cannot show that he was subjected to adverse employment action simply as a result of the reclassification, summary judgment is also proper using the indirect method.

7

### B. The elimination of his Machinist/Painter position

Next, Plaintiff alleges that Defendant eliminated his position in retaliation to his complaints against the company. I note that Parker, the other PCBG employee who, as did Plaintiff, filed a charge of discrimination in March of 2002 and a lawsuit in August 2002, remained with the company and was promoted.

Under the direct method of proof, Plaintiff first points to the temporal proximity of his lawsuit and the decision to eliminate his position.[1] Speculation as to timing does not support a reasonable inference of retaliation. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). His remaining attempts to establish a causal connection likewise fail. He points to other examples of retaliatory intent as well, though even taken together, Plaintiff fails to piece together a mosaic of discrimination. Plaintiff states that Defendant allowed litigation to drive employment decisions, however there is no indication of what decision, if any, Defendant's lawyers took part in. Moreover, there is no testimony at all that any lawyer weighed in on the decision to eliminate the Machinist/Painter position (or the decision not to retain Plaintiff). Similarly, Plaintiff points to the fact that Defendant failed to follow its own procedures as raising the inference of retaliation. As examples, he points to the fact that Rene Gibson failed to inform Plaintiff that his job was eliminated when he returned from work. It is true that Gibson did not explicitly inform Plaintiff that his job had been eliminated. However, she did instruct him not to return to work until she was able to determine what other work would be available for him. It is

---

[1] In March 2002, Plaintiff filed a charge of Discrimination, and in April 2002 Defendant created the new 'Painter' classification. In August 2002, Plaintiff filed his federal civil rights lawsuit, and in the Fall of 2002 Plaintiff's Machinist/Painter position was eliminated. Finally, in March 2003 Plaintiff complained of continued retaliation, and Plaintiff's employment was terminated on June 3, 2003.

unclear how this shows retaliation, particularly when Defendant did not fire Plaintiff on the spot, but rather attempted to find new work for him within the company. Even assuming that Plaintiff was able to cobble together a *prima facie* case of retaliation in this instance, under either the direct or indirect methods, Defendant has put forth a legitimate, non-discriminatory rationale for its elimination of the Machinist/Painter position.

The record shows that Yates decided to eliminate Plaintiff's position as part of a cost-cutting initiative. Though Plaintiff insists that this initiative did not exist, such assertions are inconsistent with the record. The testimony of several employees, including Yates, Gibson and Schutt, establishes that a cost-saving initiative was in place. Though Plaintiff argues that insufficient documentation has been put forth by Defendant to show that this was the case, he puts forth no evidence to contradict the testimony put forth by Defendant. Accepting that Defendant had undertaken a cost-saving initiative, Plaintiff fails to contradict the testimony by Yates that eliminating Plaintiff's Machinist/Painter position was in response to cost-cutting measures. Plaintiff has failed to show that Pepsi's cost-cutting measures were merely pretext.

Accordingly, Defendant's motion for summary judgment as to this claim is granted.

C. Failure to retain

Finally, Plaintiff contends that he was ultimately terminated because of Defendant's retaliatory intent. Defendant maintains that Plaintiff was terminated because he was unqualified to work as a Machinist.

Plaintiff has presented sufficient evidence to show that a material question of fact exists as to Plaintiff's termination. As an initial matter, it is undisputed that Plaintiff remained classified as a Machinist, even after the new Painter classification came into being, and after his

9

specific "Machinist/Painter" position was eliminated. Defendant continued to hire, and train other Machinists, though it found Plaintiff unqualified to serve in this role. Indeed, Defendant is correct that several discussions were held regarding Plaintiff's qualifications. Gibson began the inquiry and spoke with Plaintiff's current and former supervisors to determine Plaintiff's qualifications to work as a machinist. Testimony is consistent that Plaintiff primarily served as a painter, though he at times assisted with changeovers and other tasks when an extra set of hands was needed. No supervisor, however, stated that he was unqualified to serve as a Machinist, though most indicated that they did not have sufficient knowledge regarding this point. Based on these opinions, it was determined that Plaintiff was not qualified to serve as a Machinist. Plaintiff was offered a General Plant position, and when he did not accept this position, he was terminated.

It is likewise uncontested that Defendant used contract painters prior to the elimination of Plaintiff's position, and have continued to use contract painters as needed.

Though Defendant is correct that the question is not whether Plaintiff was actually qualified for the position of Machinist, but rather, whether PCGB honestly believed that Plaintiff was not qualified for the position, Plaintiff has raised sufficient questions as to PCGB's honest beliefs that summary judgment is inappropriate. *Holmes v. Potter*, 384 F.3d 356, 361-62 (7th Cir. 2004). It is undisputed that Plaintiff had filed a charge of continued retaliation in March 2003, and that he was subsequently unable to return to his prior position, and then terminated. Likewise, Defendants have failed to put forth sufficient evidence to show that it honestly believed that Plaintiff was unqualified. No former supervisor testified that Plaintiff was unqualified, although conceding that he generally served as a painter. Given the evidence on the record, I find that there is a genuine issue of material fact surrounding PCGB's honest belief as to

Plaintiff's qualifications for the Machinist position. Accordingly, both Plaintiff's and Defendant's motions for summary judgment are denied as to this claim.

**CONCLUSION**

For the foregoing reasons, Pepsi's motion for summary judgment is granted in part and denied in part. Plaintiff's motion for partial summary judgment is denied in whole.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: September 14, 2011